IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**FOREST GUARDIANS**,

        Plaintiff,

v.                                          No. CIV 06--214 BB/KBM

**UNITED STATES BUREAU OF
RECLAMATION and UNITED STATES
ARMY CORP OF ENGINEERS**,

        Federal Defendants.


### MEMORANDUM OPINION

THIS MATTER comes before the Court on Federal Defendants'[1] May 25, 2006 motion to dismiss or, in the alternative, for a more definite statement (Doc. 8), as well as Plaintiff's August 10, 2006 motion to file a supplemental complaint (Doc. 16). Having reviewed the submissions of the parties and the relevant law, the Court finds that Federal Defendants' motion to dismiss should be GRANTED and Plaintiff's motion to file a supplemental complaint should be DENIED.

### Standard for Reviewing a Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a

---

[1] Federal Defendants have moved for a more definite statement under Federal Rule of Civil Procedure 12(e) because Plaintiff referred to the Bureau of Reclamation and the Army Corp of Engineers as one entity in its original Complaint. For purposes of efficiency, however, the Court will refer to these two federal agencies collectively as "Federal Defendants" except where reference to one agency or the other is necessary for clarity.

claim upon which relief can be granted."[2] Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss filed pursuant to Rule 12(b)(6), this Court is required to accept as true all well-pleaded facts alleged in the complaint. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court does not, however, accept conclusory allegations as true. *E.F.W. v. St. Stephens Indian High Sch.*, 264 F.3d 1297, 1306 (10th Cir. 2001). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). This Court will dismiss the complaint, or claims contained therein, only if it appears that the plaintiff can prove no set of facts in support of his or her claim that would entitle it to relief. *Phelps*, 886 F.2d at 1266.

Further, Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) and *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). If, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed. *Id.*

## Statutory Background: The Endangered Species Act

In 1973, Congress enacted the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of

---

[2] Federal Defendants moved to dismiss Plaintiff's claims under two alternative Rules of Civil Procedure: Rule 12(b)(1) for "lack of jurisdiction over the subject matter" and Rule 12(b)(6) "for failure to state a claim." As explained below in footnote three, the Court concludes that Rule 12(b)(6), not Rule 12(b)(1), is the appropriate standard for reviewing Federal Defendants' motion to dismiss.

2

such endangered species and threatened species." *Id.* § 1531(b).  The goal of the ESA is to protect endangered species by protecting the ecosystems around them.  *Palila v. Hawaii Dep't of Land and Natural Res.*, 852 F.2d 1106, 1108 (9th Cir. 1988).  It "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

The ESA's protection of endangered and threatened species and the conservation of their ecosystems begins with a "listing determination" by the Secretary of the Interior (the "Secretary"). Specifically, the Secretary determines whether species qualify for listing as endangered or threatened species in need of protection.  *See* 16 U.S.C. § 1533(a)(1).  The Secretary's listing determination also triggers protections for the habitat of the listed species:  "to the maximum extent prudent and determinable [the Secretary] shall, concurrently with [the listing determination], designate any habitat of such species which is then considered to be critical habitat."  *Id.* § 1533(a)(3).

The ESA sets forth two major substantive protections for listed species.  First, after a species has been listed as either endangered or threatened, Section 9 of the ESA prohibits any "person" within the jurisdiction of the United States from "taking" that species.  16 U.S.C. § 1538(a)(1).  "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).  The taking prohibition of Section 9 applies to all forms of federal, state, and local governments, as well as private persons and entities.  *See id.* § 1532(13).

Second, Section 7(a)(1) states that all agencies "shall . . . utilize their authorities in furtherance of the purposes of [the ESA] by carrying out programs for the conservation of

endangered species and threatened species." 16 U.S.C. § 1536(a)(1). In short, this section directs federal agencies to undertake programs to conserve protected species.

To promote the ESA's purpose to avoid harm to both listed species and their critical habitats, Section 7 requires all federal agencies to consult with the Secretary to evaluate the consequences of proposed federal actions so that they neither jeopardize the existence of a listed species nor modify a designated critical habitat. This Section 7 consultation process is designed to ensure federal agencies comply with the ESA's substantive provisions. Specifically, under Section 7(a)(2), each federal agency must insure that any action "authorized, funded, or carried out by such agency" is "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). To achieve this objective, the ESA requires the action agency to consult with the U.S. Fish and Wildlife Service ("FWS") whenever a federal action "may affect" an endangered species or designated critical habitat. 50 C.F.R. § 402.14(a). Federal agencies often initiate the Section 7 consultation process by preparing a "biological assessment" ("BA") to evaluate the potential effects of a proposed action. *Id.* § 402.12(a).

If, after reviewing the BA, the FWS determines that a proposed federal action is "likely to adversely affect" a listed species, the action agency and FWS enter into "formal consultation." 50 C.F.R. § 402.14. "Formal consultation" procedures require that FWS prepare a biological opinion ("BiOp") concluding whether the proposed action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of critical habitat. *Id.* If the FWS concludes that the action is likely to jeopardize the continued existence of a listed species, the FWS must set forth reasonable and prudent alternatives ("RPAs") to the action, if

4

any. 16 U.S.C. § 1536(o)(2). A BiOp must also set forth terms and conditions allowing a permitted level of "incidental take" of the listed species associated with the agency's action, thereby exempting such take from the prohibitions of Section 9. *Id.* § 1536(o)(2).

Finally, the ESA contains a citizen suit provision that grants a right of action against federal agencies that are alleged to be in violation of the ESA's requirements. This citizen suit provision states in relevant part, "[A]ny person may commence a civil suit on his own behalf (A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of [the ESA]." 16 U.S.C. § 1540(g)(1). At least sixty days prior to filing suit under this provision, a party must provide the alleged offender and Secretary of the Interior with a "Notice of Intent" ("NOI") to sue. *Id.* § 1540(g)(2)(A).

## Factual Background

Federal Defendants own and operate a series of four dams and three reservoirs on the portion of the Pecos River stretching from Santa Rosa, New Mexico to the New Mexico-Texas border. Compl. ¶ 2. Federal Defendants operate these dams and reservoirs for two purposes: 1) to deliver water for use by irrigators in the Carlsbad Irrigation District and 2) to store and deliver water that has been acquired by the New Mexico Interstate Stream Commission for purposes of meeting New Mexico's obligations to Texas under the Pecos River Compact. Compl. ¶¶ 24, 27. Federal Defendants deliver the water for both of these purposes by making "block releases" -- releases of large volumes of water in a concentrated period of time. *Id.*

The portions of the Pecos River owned and operated by Federal Defendants contain the only remaining population of the Pecos Bluntnose Shiner (the "Minnow"), a species that the Secretary listed as "threatened" in 1987. Compl. ¶¶ 2-3. Plaintiff alleges that Federal Defendants

operate the Pecos River dams and reservoirs in such a way that the flow of the Pecos River is characterized by an extremely irregular and unnatural hydrograph with short periods of very high flows that occur during block releases and alternating long periods of critically low flows and river drying ("intermittency"). Compl. ¶ 5. The block releases wash Minnow larvae and eggs into downstream reservoirs where they are not viable and cannot survive. Compl. ¶ 26. Further, the block releases allegedly alter the physical channel characteristics of the Pecos River and scour the river bottom of critical sediments, which renders the Pecos River unsuitable for the survival of the Minnow. *Id.* The long dry periods between block releases - intermittency - which have become more significant and of longer duration in recent years, kill some of the remaining populations of the Minnow and individuals. Compl. ¶ 30.

The FWS has determined that both the block releases and intermittency "are actions that adversely affect the [Minnow] and its critical habitat." Compl. ¶ 5. Therefore, Federal Defendants have been required to complete Section 7 consultations with the FWS in order to continue their Pecos River operations. *See* Compl. ¶¶ 33-52. In December 2005, Federal Defendants submitted a BA to the FWS to initiate Section 7 consultation concerning the effects of its Pecos River operations during the 2006 irrigation season. Compl. ¶ 52. The previous BiOp issued by the FWS, covering the 2003-2005 irrigation seasons, expired on February 28, 2006. Compl. ¶ 6.

**Procedural History**

On March 21, 2006, Plaintiff filed this action without sending Federal Defendants a recent NOI. The Complaint, which was filed before the BiOp for the 2006 irrigation season had been issued, alleged that Federal Defendants' 2006 Pecos River operations violated Sections 7(a)(1),

7(a)(2), and 9 of the ESA. Compl. ¶¶ 89, 91, 93, 95. On April 14, 2006, the FWS issued a BiOp for the 2006 irrigation season, which related back to March 1, 2006. *See* Doc. 8, Ex. A, Attach. 2. The FWS issued another BiOp on May 18, 2006. *See* Doc. 8, Ex. A, Attach. 3. This most recent BiOp went into effect when Federal Defendants issued a Record of Decision on its long-term plan for its Pecos River operations on July 19, 2006, and covers Federal Defendant's operations for a ten-year period. *Id.*

On May 26, 2006, Federal Defendants filed the motion to dismiss currently before the Court arguing, among other things, that Plaintiff's claims were barred because they failed to comply with the sixty-day notice provision required by ESA's citizen-suit provision (Doc. 8). Plaintiff subsequently sent Federal Defendants the requisite NOI on June 5, 2006 (Doc. 18). Then, more than sixty days later, on August 10, 2006, Plaintiff filed the motion to file a supplemental complaint currently before the Court (Doc. 16).

## Discussion

**I.      Federal Defendants' Motion to Dismiss**

The ESA citizen suit provision grants a right of action against federal agencies that are alleged to be in violation of the ESA's requirements. *See* 16 U.S.C. § 1540(g)(1). However, in creating this private right of action, Congress expressly conditioned suit on the private party providing the alleged offender and the Secretary with prior written notice of the alleged violations:

> (2)(A)  No action may be commenced under subparagraph (1)(A) of this section-(i) prior to sixty days after written notice of the violation has been given to the Secretary [of the Interior], and to any alleged violator of any such provision . .

*Id.* § 1540(g)(2)(A).  Thus, a private party, like Plaintiff in this case, must provide the Secretary and any federal agencies with a NOI no later than sixty days prior to filing suit against those federal agencies.

In *Hallstrom v. Tillamook County*, the Supreme Court considered a sixty-day notice provision identical to the one at issue in this case and held, "[T]he notice and 60-day delay requirements are mandatory conditions precedent to commencing suit."  493 U.S. 20, 31 (1989).  The Supreme Court also concluded that the sixty-day notice provision should not be given a flexible or pragmatic construction.  *Hallstrom*, 493 U.S. at 26.  Specifically, the Supreme Court rejected the argument that, in the name of judicial efficiency, the district court could properly deem the notice requirement satisfied if a suit commenced without proper notice was stayed until sixty days after notice had been given.  *Id.*  It explained:

> Under Rule 3 of the Federal Rules of Civil Procedure, '[a] civil action is commenced by filing a complaint with the court.'  Reading [the sixty-day notice provision] in light of this rule, a plaintiff may not file suit before fulfilling the 60-day notice requirement.  Staying judicial action once the suit has been filed does not honor this prohibition.

*Id.*  The Supreme Court thus concluded that Congress intended that the sixty-day notice provision be strictly interpreted and applied.  It held that where a party sues under a citizen provision but does not comply with the notice and sixty-day delay requirements, the district court must dismiss

the suit as barred by the terms of the statute.[3]  *Hallstrom*, 493 U.S. at 33.  It emphasized, "[A] district court may not disregard these requirements at its discretion."  *Id* at 31.

Following *Hallstrom*, the Tenth Circuit strictly construed and applied a nearly identical citizen suit provision in the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).  In *N.M. Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.*, the Tenth Circuit recounted the Supreme Court's reasoning and concluded that compliance with the sixty-day notice requirement set forth in the Clean Water Act was a mandatory precondition for suit.  72 F.3d 830, 833 (10th Cir. 1996).  It also held that, where there are multiple plaintiffs in such a suit, each plaintiff must satisfy the notice requirement.  *Id.*  The Tenth Circuit stated, "[T]he purpose of the pre-suit notice is to allow the parties time to 'resolve their conflicts in a nonadversarial time period' [and to] alert[] the appropriate agency so that administrative action may initially provide' relief before a court becomes involved."  *Id.* (quoting *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995).  Moreover, since the United States is the defendant, the sixty-day notice provision must be strictly construed because it operates as a waiver of sovereign immunity.  *Lane*

---

[3] Federal Defendants argue extensively that a failure to comply with the sixty-day notice provision deprives a court of its subject matter jurisdiction over an ESA citizen suit.  It is therefore important to highlight one aspect of the holding in *Hallstrom*:  the Supreme Court expressly declined to decide "whether [the sixty-day notice provision] is jurisdictional in the strict sense of the term."  *Hallstrom*, 493 U.S. at 31.  Rather, it emphasized that where an action is barred by the terms of the statute, it must be dismissed.  *Id.*  Likewise, the Tenth Circuit has expressly not decided whether non-compliance with the sixty-day notice provision deprives the district court of subject matter jurisdiction.  Specifically, the Tenth Circuit stated, "We need not decide the intriguing issue so carefully left open by *Hallstrom* -- whether a mandatory precondition to suit is a component of non-waivable 'subject matter jurisdiction.'"  *N.M. Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 834 n.2 (10th Cir. 1996).  Thus, this Court will not analyze this issue in terms of subject matter jurisdiction.  Instead, it will consider whether Plaintiff provided Federal Defendants with the requisite sixty-day notice, thereby satisfying the mandatory condition precedent for filing this action under the citizen suit provision of the ESA.

*v. Pena*, 518 U.S. 187, 192 (1996) (noting that a waiver of sovereign immunity "will be strictly construed in terms of its scope, in favor of the sovereign.").

Federal Defendants argue that this action should be dismissed because Plaintiff did not provide them with a recent NOI regarding the ESA violations alleged in the Complaint (Doc. 8). Federal Defendants contend that this procedural failure is dispositive of this litigation. Plaintiff does not dispute that it failed to provide Federal Defendants with a recent NOI. Instead, Plaintiff argues: 1) the notice requirement was satisfied by a September 24, 2001 NOI it provided to Federal Defendants in a previous lawsuit and/or 2) the notice requirement in this case was satisfied or waived by an even earlier August 8, 2001 letter Plaintiff's counsel wrote to the court in litigation that predated the September 24, 2001 NOI. The Court considers these arguments in turn.

      A.      **The September 24, 2001 Notice**

On September 24, 2001, Plaintiff provided Federal Defendants with a NOI concerning alleged violations of the ESA. Plaintiff subsequently filed a lawsuit on June 27, 2002, alleging ESA violations concerning the 2002 irrigation season on the Pecos River. The ESA claims in the 2002 lawsuit were resolved and dismissed by stipulation on February 14, 2003.

The Court finds that the September 24, 2001 NOI does not satisfy the notice requirement for the instant Complaint. The September 2001 NOI simply could not put Federal Defendants on notice of alleged violations that would occur almost five years later. *Moden v. U.S. Fish and Wildlife Serv.*, 281, F. Supp. 2d 1193, 1205-1206 (D. Ore. 2003) (dismissing ESA claim for lack of jurisdiction because sixty-day notice provided before the allegedly unlawful action occurred did not satisfy ESA's notice requirement); *Am. Rivers, Inc. v. U.S. Army Corp. of Eng'rs*, 2004 WL

2905281 * 3 (D. Minn. Dec. 10, 2004) (finding that ESA sixty-day notice pertaining to earlier biological opinion could not serve as notice of violations for challenges to implementation of subsequent biological opinion).

Plaintiff cites two cases in support of its argument that the September 24, 2001 NOI satisfied the notice obligations for this case: *Rio Grande Silvery Minnow v. Keys*, 2002 U.S. Dist. LEXIS 9246 (D.N.M. 2002), and *Water Keepers Alliance v. U.S. Dep't of Defense*, 271 F.3d 21 (1st Cir. 2001). The Court finds these cases distinguishable because neither of them concerned an effort by the plaintiff to use a single NOI for two different lawsuits.

In accordance with both the Supreme Court's and the Tenth Circuit's admonition that the sixty-day notice provision be construed strictly, the Court finds that the September 24, 2001 NOI does not satisfy plaintiff's obligation because it concerned a previous lawsuit and was sent nearly five years before this Complaint was filed.

**B.     The August 8, 2001 Letter to the Court**

Plaintiff also now contends that an August 8, 2001 letter its counsel wrote to the court in connection with litigation that preceded the September 24, 2001 NOI satisfied the notice requirement for this case. The Court is not persuaded by this argument since the August 8, 2001 letter merely indicated that, if Plaintiff were to file "a new action," the parties would request that it be assigned to the judge that presided over the previous lawsuit because of his familiarity with the facts and legal issues. In any event, that "new action" referenced in the letter was filed in 2002, *Forest Guardians v. U.S. Bureau of Reclamation*, Civ. No. 02-0749 JB/LFG, and thus the August 8, 2001 letter has run its course and is no longer operative.

Thus, Plaintiff failed to provide the required sixty-day notice and therefore did not satisfy the mandatory condition precedent necessary to file this suit. Consequently, Plaintiff's action is barred by the terms of the statute.

## II.     Plaintiff's Motion to File a Supplemental Complaint

The next question the Court must confront is whether Plaintiff can cure its defective notice by sending Federal Defendants a NOI after commencing the action and then waiting sixty days to file a supplemental complaint.[4]

Prohibiting parties from sending a NOI after commencing an action and then filing a supplemental complaint advances Congress' goal of creating a sixty-day nonadversarial period during which the parties might reach a resolution without need for judicial intervention. *See Hallstrom*, 493 U.S. at 29. Specifically,

> After the complaint is filed the parties assume an adversary relationship that makes cooperation less likely. Because a mere adjustment of the trial date or the filing of a supplemental or amended complaint to cure the defective notice cannot restore a sixty-day non-adversarial period to the parties, [a court should] dismiss suit where the complaint is filed less than sixty days after actual notice to the agency and the alleged violator.

*Basel Action Network*, 370 F. Supp. At 76 (quoting *Garcia v. Cecos Int'l*, 761 F.2d 76, 52 (1st Cir. 1985); *see also K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 33 F. Supp. 2d 1143, 1155 (W.D. Mo.

---

[4] Federal Rule of Civil Procedure 15(d) provides, "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). This Rule "gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint transactions, occurrences, or events." *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001). "Such authorization 'should be liberally granted unless good reason exists for denying leave' but such notions 'are addressed to the sound discretion of the trial court." *Id.* (citing *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989)).

1998) ("Just as the Supreme Court declined to allow the plaintiff in *Hallstrom* to remedy its notice deficiency after commencing its RCRA action, this court declines to allow [the plaintiff] to remedy its notice deficiency [in an amended cross-claim] after commencing its RCRA action."); *Basel Action Network v. Mar. Admin.*, 370 F. Supp. 2d 57, 76 (D.D.C. 2005) ("[A plaintiff's] defective notice cannot be cured by the filing of an amended complaint after the required notice period."). The Court thus concludes that Plaintiff may not cure its defective notice by providing a NOI after the original complaint was filed and then waiting sixty days to file a motion to file a supplemental complaint.

The Court has reviewed the two cases cited by Plaintiff in support of its argument that it satisfied the notice requirement by doing just this. Both are factually distinguishable from this case and are therefore not controlling. In *Zands v. Nelson*, the causes of action asserted in the adequately noticed amended complaint were completely different than those asserted in the inadequately noticed original complaint. 779 F.Supp. 1254, 1258 (S.D.C.A. 1991) Highlighting this factual distinction, the *Zands* court specifically indicated that its holding might not apply in a case where the same causes of action appeared in both the original and amended (or supplemental) complaint. It stated, "Notably, this case does not present the more difficult situation where a claim is in the initial complaint, notice is given, and then the same claim is in the amended complaint." *Id.*

The instant case does present what *Zands* referenced as "the more difficult situation." Here, many of the causes of action included in Plaintiff's first proposed supplemental complaint are identical to the causes of action asserted in the inadequately noticed original complaint.[5] This

---

[5] Specifically, the Third, Fourth, Fifth, and Sixth causes of action set forth in Plaintiff's first proposed supplement complaint are substantially identical to the Second and Third causes of

is the type of situation the statute is aimed at and plaintiffs have not been allowed to cure the defective notice by merely filing an amended complaint. *See e.g., K.C. 1986 Ltd. P'ship*, 33 F. Supp. 2d at 1155.

The other case Plaintiff relies on is *Buggsi, Inc. v. Chevron U.S.A., Inc.*, 857 F. Supp. 1427 (D. Ore. 1994). However, this is not persuasive authority for two reasons. One, it cites to *Zands*, which is distinguishable on the grounds just described. Two, the court's factual and procedural recitation does not make clear whether the causes of action asserted in the amended complaint are the same ones asserted in the original complaint. Thus, the Court does not find either of Plaintiff's cases persuasive on this issue. The Court therefore denies the motion to file a supplemental complaint.[6]

---

action in the original complaint. The main difference is that Plaintiff sets forth separate causes of action for the Bureau of Reclamation and the Army Corps of Engineers in the first proposed supplemental complaint instead of combining these two agencies as it did in the original complaint. Additionally, the causes of action in the first proposed supplemental complaint do not specifically reference the 2006 irrigation season.

[6] The Eighth and Ninth causes of action set forth in the first proposed supplemental complaint do not contain a notice requirement because they are brought under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and directed at FWS. The Court notes therefore that the foregoing reasoning does not apply to these two causes of action.

However, in determining whether to allow an amendment or supplement under Rule 15(d), it is proper for the Court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation. *Pabst Brewing Co. v Corrao*, 176 F.R.D. 552, 557 (E.D. Wis. 1997), *aff'd* 161 F.3d 434 (7th Cir.1998); *HK Sys. v Rapistan Demag Corp.*, 175 F.R.D. 523, 524 (E.D Wis. 1997). The Court finds it very likely that Plaintiff will file a new action asserting the seven causes of action that involve a notice requirement included in its first proposed supplemental complaint. The Court also finds it serves the interest of judicial economy to resolve those causes of action and the two APA claims, the Eighth and Ninth causes of action, in a single action. Therefore, the Court exercises its discretion in denying Plaintiff's motion to supplement its complaint with respect to the Eighth and Ninth causes of action and suggests that Plaintiff reassert these claims if and when it files a new complaint after complying with the ESA notice requirement.

14

Plaintiff did not comply with the ESA's sixty-day notice provision before filing its Complaint.  Due to Plaintiff's failure to satisfy this mandatory condition precedent to suit, this action must be dismissed as barred by the terms of the statute.  Further, Plaintiff may not cure its defective notice by sending Federal Defendants a NOI after commencing suit and then waiting sixty days to file a supplement complaint.

As Federal Defendants acknowledge, Plaintiff remains free to give notice and file its suit in compliance with the statute to enforce the pertinent provisions of the ESA.

## Conclusion

Based on the foregoing, the motion to dismiss will be GRANTED and the motion to file a supplemental complaint will be DENIED.

DATED November 17, 2006.

*(signature)*
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys:**

**For Plaintiff**
Steven Sugarman

**For Defendants**
Sue Ellen Wooldridge